**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

THE CITY OF AMSTERDAM,                  :
                                        :  Case No.  1:19-cv-00896-MAD-CFH
        Plaintiff,                      :
                                        :
    v.                                  :
                                        :
PURDUE PHARMA L.P.; PURDUE PHARMA       :
INC.; PURDUE FREDERICK COMPANY, INC.;   :
TEVA PHARMACEUTICALS USA, INC.;         :
CEPHALON, INC.; JOHNSON & JOHNSON;      :
JANSSEN PHARMACEUTICALS, INC.;          :
JANSSEN PHARMACEUTICA, INC. N/K/A       :
JANSSEN PHARMACEUTICALS, INC.;          :
ORTHO-MCNEIL-JANSSEN                     :
PHARMACEUTICALS, INC. N/K/A JANSSEN     :
PHARMACEUTICALS, INC.; ENDO HEALTH      :
SOLUTIONS INC.; ENDO                     :
PHARMACEUTICALS, INC.; ALLERGAN PLC     :
F/K/A ACTAVIS, INC. PLC; ACTAVIS, INC. F/K/A :
WATSON PHARMACEUTICALS, INC.;           :
WATSON LABORATORIES, INC.; ACTAVIS      :
LLC; ACTAVIS PHARMA, INC. F/K/A          :
WATSON PHARMA, INC.; INSYS               :
THERAPEUTICS, INC.; MCKESSON             :
CORPORATION; CARDINAL HEALTH INC.;      :
AMERISOURCEBERGEN DRUG                   :
CORPORATION; AMERICAN MEDICAL           :
DISTRIBUTORS, INC.; BELLCO DRUG CORP.;  :
BLENHEIM PHARMACAL, INC.; EVEREADY      :
WHOLESALE DRUGS LTD.; KINRAY, LLC;      :
PSS WORLD MEDICAL, INC.; ROCHESTER      :
DRUG COOPERATIVE, INC.; DARBY GROUP     :
COMPANIES, INC.; RAYMOND SACKLER        :
FAMILY; MORTIMER SACKLER FAMILY;        :
RICHARD S. SACKLER; JONATHAN D.         :
SACKLER; MORTIMER D.A. SACKLER;         :
KATHE A. SACKLER; ILENE SACKLER         :
LEFCOURT; BEVERLY SACKLER; THERESA      :
SACKLER; DAVID A. SACKLER; RHODES       :
TECHNOLOGIES;  RHODES TECHNOLOGIES      :
INC.; RHODES PHARMACEUTICALS L.P.;      :
RHODES PHARMACEUTICALS INC.; TRUST      :

FOR THE BENEFIT OF MEMBERS OF THE
RAYMOND SACKLER FAMILY; THE P.F.
LABORATORIES, INC.; STUART D. BAKER;
PAR PHARMACEUTICAL, INC.; PAR
PHARMACEUTICAL COMPANIES, INC.;
MALLINCKRODT PLC; MALLINCKRODT
LLC; SPECGX LLC; MYLAN
PHARMACEUTICALS, INC.; SANDOZ, INC.;
WEST-WARD PHARMACEUTICALS CORP.
N/K/A HIKMA PHARMACEUTICALS, INC.;
AMNEAL PHARMACEUTICALS, INC.;
NORAMCO, INC.; JOHN N. KAPOOR; ANDA,
INC.; DISCOUNT DRUG MART, INC.; HBC
SERVICE COMPANY; MORRIS & DICKSON
CO., LLC; PUBLIX SUPERMARKETS, INC.;
SAJ DISTRIBUTORS; VALUE DRUG
COMPANY; SMITH DRUG COMPANY; CVS
HEALTH CORPORATION; RITE AID OF
MARYLAND, INC., D/B/A RITE AID MID-
ATLANTIC CUSTOMER SUPPORT CENTER,
INC.; RITE AID CORP.; WALGREENS BOOTS
ALLIANCE, INC.; WALGREEN EASTERN CO.;
WALGREEN, CO.; WAL-MART INC.; MIAMI-
LUKEN, INC.; THE KROGER CO.; HENRY
SCHEIN, INC.; HENRY SCHEIN MEDICAL
SYSTEMS, INC.; EXPRESS SCRIPTS
HOLDING COMPANY; EXPRESS SCRIPTS,
INC.; CAREMARK RX, L.L.C.;
CAREMARKPCS HEALTH, L.L.C. D/B/A
CVS/CAREMARK; CAREMARK, L.L.C.;
CAREMARKPCS, L.L.C.; UNITEDHEALTH
GROUP INCORPORATED; OPTUM, INC.;
OPTUMRX INC..; PRIME THERAPEUTICS
LLC; NAVITUS HOLDINGS, LLC; AND
NAVITUS HEALTH SOLUTIONS, LLC,

Defendants.

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO REMAND**

# TABLE OF CONTENTS

## CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ 2

PRELIMINARY STATEMENT ................................................................................................. 4

LEGAL STANDARD OF REVIEW .......................................................................................... 7

ARGUMENT ............................................................................................................................. 8

A.    The Court Should Remand this Action Because there is an Active Coordinated Action in Suffolk County Overseeing New York Entities ................................................................. 8

B.    The Court Should Remand This Action Because There is No Diversity of Citizenship between the City of Amsterdam and the PBM Defendants and Fraudulent Misjoinder Is Not Law in this Circuit. ............................................................................................................... 9

C.    The City of Amsterdam's Claims Against The PBM Defendants Raise Common Questions Of Fact And Arise Out Of The Same Occurrence, And Thus Are Properly Joined And Should Not Be Severed .............................................................................. 11

D.    Factual Overlap Satisfies "Common Question of Law or Fact" Requirement ............... 14

E.    Defendants' Assertions of Lack of "Common Legal Issues" are Irrelevant ................... 15

F.    The PBM Defendants' Role in Causing and Contributing to the Opioid Epidemic Should Not be Ignored and the Claims Should Not be Severed ................................................. 15

G.    Severance Under Rule 21 Favors Remand of the Instant Action and Will Prejudice Plaintiff as the PBM Defendants are an Essential Part in the Chain of Distribution ...... 16

CONCLUSION ........................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Blockbuster, Inc. v Galeno, 472 F3d 53, 57 [2d Cir 2006]............................................................ 7

City of Spartanburg v. Rite Aid of South Carolina, Inc.,

    Case No. 7:18-cv-1799-BHH (D.S.C. July 25, 2018) ............................................. 11

Commonwealth of Kentucky et al. v. Walgreens Boots Alliance, Inc. et al.,

    1:18-op-46311-DAP ............................................................................................. 11

County of Carbon v. Purdue Pharma, L.P., et al. CA2:18-05625) ................................................ 11

County of Delaware, PA v. Purdue Pharma L.P., et al.

    NO. 2017-008095 - Coordinated Civil Proceedings................................................. 11

County of Greenville v. Rite Aid of South Carolina, Inc.,

Case No. 6:18-cv1085-TMC (D.S.C. May 21, 2018)................................................... 11

Delaware County, Pennsylvania v. Purdue Pharma, L.P., et al. CA2:18-05627 ......................... 11

Delaware v. Purdue Pharma L.P., No. 18-383, 10-11 (D. Del. Apr. 25, 2018)........................... 11

Fed. Ins. Co. v Tyco Intl. Ltd., 422 F Supp 2d 357, 378 [SDNY 2006]) ..................................... 13

Gunn v. Minton, 568 U.S. 251, 256 (2013) ................................................................................. 7

Kalie v. Bank of Am. Corp., 297 FRD 552, 558-559 [SDNY 2013] ........................................... 17

Magnuson, 2012 U.S. Dist. LEXIS 101982, at *10....................................................................... 9

Massey v. Cecil, 2019 US Dist LEXIS 68480.............................................................................. 15

N. Jersey Media Group, Inc. v Fox News Network, LLC, 312 FRD 111, 115 [SDNY 2015]..... 13

New Hampshire v. Purdue Pharma,

    2018 U.S. Dist. LEXIS 3492, at *9-10 (D.N.H. Jan. 9, 2018) ................................. 11

New Mexico v. Purdue Pharma L.P., et al., No. 18-cv-386 at 15 (D.N.M. June 12, 2018) ......... 11

Nolan v Olean Gen. Hosp.,

  2013 US Dist LEXIS 96090, [WDNY July 10, 2013, No. 13-CV-333-A] .............................. 18

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). ........................................... 9

Phillips, 2006 U.S. Dist. LEXIS 83288, at *6 ............................................................................... 7

Pollock v Trustmark Ins. Co., 367 F Supp 2d 293, 296-297 [EDNY 2005].................................. 7

Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 851-52 (S. D. Ill. 2006)........................... 9

Sons of the Revolution in NY, Inc. v. Travelers Indem. Co. of Am.,

  2014 US Dist LEXIS 171654 ................................................................................. 9, 13, 14, 15

State of W. Virginia ex rel. Morrisey v. McKesson Corp.,

  No. CV 16-1772, 2017 WL 357307, at *8 (S.D.W. Va. Jan. 24, 2017).................................. 11

Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996)............................................... 9

United Food & Commercial Workers Union, Local 919 v Centermark Props. Meriden Sq.,

  30 F3d 298, 301 [2d Cir 1994] ............................................................................................... 7

Weber County, Utah v Purdue Pharma L.P., et al. No. 1:18-cv-00089-RJS ............................... 11


**Statutes**

CPLR § 1002(b)....................................................................................................................9, 10

17 U.S.C. § 101 .......................................................................................................................12

28 U.S.C. §1447 .......................................................................................................................7

28 USCS § 1338 .......................................................................................................................12

The City of Amsterdam respectfully submits this *Memorandum of Law* in support of its *Motion to Remand* this action back to the Supreme Court of the State of New York, County of Montgomery to then be transferred to the Supreme Court of the State of New York, County of Suffolk to join the Coordinated New York action in Suffolk County under *In re Opioid Litig., Index No.* 400000/2017 (N.Y. Sup. Ct. 2018).

## PRELIMINARY STATEMENT

Defendants Express Scripts, Inc., Express Scripts Holding Company, CVS Health Corporation, Caremark Rx, L.L.C., CaremarkPCS Health, L.L.C. d/b/a CVS/Caremark, Caremark, L.L.C., CaremarkPCS, L.L.C., UnitedHealth Group Incorporated, Optum, Inc., OptumRx Inc., Prime Therapeutics LLC, Navitus Holdings, LLC, and Navitus Health Solutions, LLC ("PBM Defendants") improperly removed this action to the United States District Court for the Northern District of New York on July 23, 2019 before the case could be transferred to the active coordinated action in Suffolk County.

This Court should remand this action back to the Supreme Court of New York, County of Montgomery, because there is already an active coordinated action in the Suffolk County Supreme Court overseeing New York entities where this case was set to be transferred to, there is no diversity of citizenship between the City of Amsterdam and all Defendants, the PBM Defendants were properly joined, and the claims against the other Defendants share a common nexus with the claims against the PBM Defendants.

## STATEMENT OF FACTS & PROCEDURAL BACKGROUND

Plaintiff properly commenced its action in the Supreme Court of the State of New York, County of Montgomery on June 25, 2019, predicated on state law claims against Manufacturer, Distributor and Pharmacy Benefit Manager Defendants ("PBM Defendants").

The Complaint alleges that the City of Amsterdam spends substantial amounts each year to provide and pay for health care, services, pharmaceutical care and other necessary services and programs on behalf of residents of the City whom are indigent or otherwise eligible for services, including payments through services such as Medicaid for prescription opium painkillers ("opioids") which are manufactured, marketed, promoted, sold, and/or distributed by the Defendants. The City of Amsterdam also provides a wide range of other services to its residents, including law enforcement, services for families and children, and public assistance. In recent years, the City of Amsterdam has been forced to expend substantial amounts of money due to the opioid epidemic and as a direct result of the actions of these Defendants.

The Complaint asserts seven causes of action against all Defendants, including the PBM Defendants who now wrongfully removed this action: (1) Deceptive Acts and Practices under New York General Business Law §349; (2) False Advertising under New York General Business Law §350; (3) Public Nuisance; (4) Violation of New York Social Services Law § 145-B; (5) Fraud; (6) Unjust Enrichment; and (7) Negligence (Compl. ¶¶ 1141 - 1204).  Plaintiff seeks to recover damages for the harm caused by false and misleading marketing campaigns that promoted opioid medications as safe and effective for long-term treatment of chronic pain, and by the sale and distribution of those drugs in Amsterdam and in the neighboring New York counties and cities.

The action was set to be part of the Coordinated New York action in the Suffolk County Supreme Court under *In re Opioid Litig.*, Index No. 400000/2017 (N.Y. Sup. Ct. 2018) before Justice Garguilo who is actively overseeing disputes and conducting court conferences regarding only New York entities. Discovery and motion practice are underway including motions to dismiss and New York discovery based arguments. The Court has set three bellwether cases, *County of Suffolk, New York v. Purdue Pharma L.P.; County of Nassau, New York v. Purdue Pharma L.P.; and State of New York v. Purdue Pharma, L.P.* Plaintiffs continue to push for a quick and efficient discovery process with a target of a March 2020 trial date. The PBM Defendants admit same in their removal notice stating that "the New York MDL is the first state MDL and most robust in the country to date."

This action was wrongfully removed on July 23, 2019 before transfer to the Coordinated New York action could be effectuated. The case was then quickly included by Defendants on a July 31, 2019 *Conditional Transfer Order* (CTO) to be transferred to the Multi-District Litigation in the Northern District of Ohio. Plaintiff filed its *Notice of Opposition to the CTO* before the due date on August 6, 2019 and will be filing a *Motion to Vacate the CTO* on or before August 22, 2019. The Opposition to the *Motion to Vacate* would be due on September 12, 2019, with Plaintiff's Reply due on September 19, 2019. The next JPML hearing session to consider CTO matters under 28 U.S.C. § 1407 is scheduled for December 5, 2019 in Austin, TX. After its initial transfer order from December 12, 2017 and, pursuant to JPML Rule 11.1(c), the JPML has dispensed with oral argument on all opioid actions sought to be transferred into MDL No. 2804.

The Coordinated New York action is in an advanced litigation stage which commenced in October 2017 after plaintiffs filed their master long form complaint. The plaintiffs in the

Coordinated New York action have since filed amended short form complaints which assert claims against additional defendants not named in the master long form complaint which has not delayed the litigation.

The City of Amsterdam's action seeking restitution for Defendants' role in the opioid crisis needs to be addressed in the proper forum, the Coordinated New York action. The improper removal to this Court with an inevitable subsequent transfer into the National Prescription Opiate Litigation, MDL No. 2804 as opposed to proper transfer to Suffolk County would impede the just and efficient administration of this action.

## **LEGAL STANDARD OF REVIEW**

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013).

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." Blockbuster, Inc. v. Galeno, 472 F3d 53, 57 [2d Cir 2006] "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Sq., 30 F3d 298, 301 [2d Cir 1994]

Federal courts "out of respect for the independence of state courts, and in order to control the federal docket, … construe … removal statute[s] narrowly, resolving any doubts against removability." Phillips, 2006 U.S. Dist. LEXIS 83288, at *6 (citations and quotations omitted).

Thus, "[a] defendant removing a case to federal court encounters instead the general principle that removal is disfavored and remand favored." Pollock v. Trustmark Ins. Co., 367 F Supp 2d 293, 296-297 [EDNY 2005]

When removal is improper, the Court must remand the case back to state court. See also 28 U.S.C. §1447.

## ARGUMENT

### A. The Court Should Remand this Action Because there is an Active Coordinated Action in Suffolk County Overseeing New York Entities

This Court should remand this action back to the Supreme Court of New York, County of Montgomery as there is already an active coordinated case proceeding in the Suffolk County Supreme Court which oversees only New York entities.  This action was set to be part of the Coordinated New York action in the Suffolk County Supreme Court under *In re Opioid Litig.,* Index No. 400000/2017 (N.Y. Sup. Ct. 2018) before Justice Garguilo but was removed before transfer could be effectuated.

The Coordinated New York action is in an advanced litigation stage which commenced in October 2017 after plaintiffs filed their master long form complaint. The plaintiffs in the Coordinated New York action have since filed amended short form complaints which assert claims against additional defendants not named in the master long form complaint which has not delayed the litigation.  The Court is actively hearing disputes and conducting court conferences overseeing only New York entities. As discussed above, discovery and motion practice are underway including motions to dismiss and New York discovery based arguments.  Further, the Court has set three bellwether cases, *County of Suffolk, New York v. Purdue Pharma L.P.; County of Nassau, New York v. Purdue Pharma L.P.; and State of New York v. Purdue Pharma, L.P.*  Plaintiffs continue to push for a quick and efficient discovery process with a target of a March 2020 trial date. The Coordinated New York action is the farthest along in the country to date.

This Court should remand this action back to the Supreme Court of New York, County of Montgomery, as there is already an active coordinated action in the Suffolk County Supreme Court overseeing New York entities where this case was set to be transferred.

**B. The Court Should Remand This Action Because There is No Diversity of Citizenship between the City of Amsterdam and the PBM Defendants and Fraudulent Misjoinder Is Not Law in this Circuit.**

The PBM Defendants improper removal is based on the diversity of citizenship and amount in controversy provisions of 28 U.S.C. §§ 1441 and 1332, "under the doctrines of fraudulent misjoinder and severance." (Removal Notice at ¶ 16, Dkt No. 1) However, as illustrated below the PBM Defendants were properly joined.

PBM Defendants removed this action from state court on the basis of "fraudulent misjoinder." Moving Defendants did this despite the fact that "[f]raudulent misjoinder … first recognized by the Eleventh Circuit … has yet to be addressed by the Second Circuit." Sons of the Revolution in NY, Inc. v. Travelers Indem. Co. of Am., 2014 US Dist LEXIS 171654, at *8 [SDNY Dec. 11, 2014]. This Court should decline to follow Eleventh Circuit caselaw.

"Fraudulent misjoinder was first recognized by the Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000), and has yet to be addressed by the Second Circuit. Fraudulent misjoinder is distinct from the doctrine of fraudulent joinder, which requires a showing of outright fraud in the pleadings, or the impossibility that a plaintiff can state a cause of action against the non-diverse defendant in state court. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998)." Sons of the Revolution in NY, Inc, Id at 8-9

Only one federal circuit has adopted fraudulent misjoinder, Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996), and it has been rejected by many other courts. See, e.g., Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 851-52 (S. D. Ill. 2006). Magnuson, 2012 U.S. Dist. LEXIS 101982, at *10 (collecting cases of other circuit courts rejecting procedural misjoinder). At least one court has expressed the view that "the Tapscott doctrine [procedural

9

misjoinder] is an improper expansion of the scope of federal diversity jurisdiction by the federal courts." Rutherford, 428 F. Supp. 2d at 852.

In its arguments for a finding of fraudulent misjoinder, PBM Defendants rely on two opioid-related cases decided by the Southern District of West Virginia denying remand. (McKesson Corp., 263 F. Supp. 3d at 647; City of Huntington v. AmerisourceBergen Drug Corp., 2017 WL 3317300) (Related proceedings in which the court considered all matters of record relevant and, after finding no material differences between the cases, incorporated the McKesson decision as its holding in City of Huntington.) In McKesson, the District Court denied plaintiff's motion to remand after it found federal diversity jurisdiction between the parties under the diversity of citizenship statute. The plaintiff in McKesson failed to comply with the procedural requirements of W. Va. Code § 55-7B-6 of West Virginia's Medical Professional Liability Act before joining the doctor in the civil action, which led to the dismissal of the claims and a finding of fraudulent joinder by the court as there was "no possibility of recovery" against him. ("Since there is no possibility of recovery against Dr. Cofer in this case, he has been fraudulently joined." McKesson Corp., Id at 647) On the fraudulent misjoinder prong of its analysis, the court held that the claims could not be properly joined since "the claims against [the doctor] arise out of different transactions, involve different evidence, and rest on different legal theories than the claims against the diverse defendants." (McKesson, Id at 646)

These two actions are not analogous to the facts of the instant case and are not binding on this Circuit. Only after finding that the fraudulent misjoinder doctrine applied, did the Court hold that remand was compelled. ("Consequently, the fraudulent misjoinder doctrine applies and compels denial of the motion to remand." McKesson, Id at 646.) As detailed above, the

fraudulent misjoinder doctrine is not law in the Second Circuit and this Court should rule in favor of remand to the State Court.

Remand motions in opioid related matters have routinely been granted, especially when a state coordinated action is present.  See Weber County, Utah v. Purdue Pharma L.P., et al. No. 1:18-cv-00089-RJS (ordering remand); Brooke County Commission, et al v. Purdue Pharma L.P., No. 18-cv-00009 (ordering remand); State of W. Virginia ex rel. Morrisey v. McKesson Corp., No. CV 16-1772, 2017 WL 357307, at *8 (S.D.W. Va. Jan. 24, 2017) (ordering remand); New Mexico v. Purdue Pharma L.P., et al., No. 18-cv-386 at 15 (D.N.M. June 12, 2018) (ordering remand); Delaware v. Purdue Pharma L.P., No. 18-383, 10-11 (D. Del. Apr. 25, 2018) (ordering remand); New Hampshire v. Purdue Pharma, 2018 U.S. Dist. LEXIS 3492, at *9-10 (D.N.H. Jan. 9, 2018) (ordering remand); City of Spartanburg v. Rite Aid of South Carolina, Inc., Case No. 7:18-cv-1799-BHH (D.S.C. July 25, 2018) (ordering remand); County of Greenville v. Rite Aid of South Carolina, Inc., Case No. 6:18-cv1085-TMC (D.S.C. May 21, 2018) (ordering remand); Commonwealth of Kentucky et al. v. Walgreens Boots Alliance, Inc. et al., 1:18-op-46311-DAP (ordering remand). In fact, just recently the MDL Court remanded two Pennsylvania cases back to the coordinated action in Delaware County, Pennsylvania, County of Delaware, PA v. Purdue Pharma L.P., et al. NO. 2017-008095 - Coordinated Civil Proceedings (Ordering remand of Delaware County, Pennsylvania v. Purdue Pharma, L.P., et al. CA2:18-05627 and County of Carbon v. Purdue Pharma, L.P., et al. CA2:18-05625.)

## C. The City of Amsterdam's Claims Against The PBM Defendants Raise Common Questions Of Fact And Arise Out Of The Same Occurrence, And Thus Are Properly Joined And Should Not Be Severed

Even assuming in arguendo that the fraudulent misjoinder doctrine applies in the Second District, the analysis as advanced by District Courts in the Second Circuit favor joinder under

11

CPLR § 1002(b). The Removing Defendants' assert that the claims against them are "separate and distinct because they present no common question of law or fact" (Removal Notice ¶ 36, Dkt No. 1). This is incorrect.

Plaintiff's Complaint details how intertwined the claims against Defendants are when it alleges that the PBM Defendants "[i]n concert with drug manufacturers who give them rebates as an incentive, … choose which drugs will be on a health insurance company's formulary, thus determining which drugs will be covered. If an insurance plan does not cover a drug, that drug will not enter the marketplace to be abused." (Comp. ¶ 1079) Additionally, the Complaint avers that "[t]he Manufacturer and PBM Defendants and their co-conspirators engaged in a conspiracy to increase the use of the least expensive, most addictive opioid by controlling the drugs' placement on the formulary. The PBM formularies are a critical piece of the enterprise described herein." (Id at ¶ 1081) Crucially, the Complaint alleges that when the PBM Defendants "were asked to limit accessibility to opioids, PBMs refused. … Using the financial quid pro quo it had with the state's PBM, it paid Merck Medco (now Express Scripts) to prevent insurers from limiting access to the drug[.]" (Id at ¶ 1083)

District Courts in this Circuit that have undertaken the fraudulent misjoinder analysis begin by applying the state law for permissive joinder. ("While the Second Circuit has not addressed the doctrine, the "'majority of federal courts' evaluate claims of fraudulent misjoinder by applying the relevant state law rule for permissive joinder rather than the federal rule." Sons of the Revolution in N.Y., Inc, Id at 9.) The New York Civil Practice Law and Rules (CPLR) rule that governs permissive joinder is almost identical to the federal Rule 20(a) and permits joinder of defendants "against whom there is asserted any right to relief jointly, severally, or in

the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences" if "any common question of law or fact would arise." CPLR § 1002(b)

The Courts then turn to the "sufficient factual nexus" analysis to determine if the permissive joinder standard is met. ("Fraudulent misjoinder" occurs when a plaintiff purposefully attempts "to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." Fed. Ins. Co. v. Tyco Intl. Ltd., 422 F Supp 2d 357, 378 [SDNY 2006])

And while "[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences, courts repeatedly have interpreted the phrase 'same transaction' to encompass all logically related claims." (N. Jersey Media Group, Inc. v. Fox News Network, LLC, 312 FRD 111, 115 [SDNY 2015])(internal quotations omitted)   Under this interpretation, it strains credulity to assert that there is no scenario in which the Plaintiff's claims against the PBM Defendants' are not logically related to qualify for the "same transaction" prong.

PBM Defendants' cited case, North Jersey Media Group, Inc v. Fox News Network, noted that courts generally deny severance on a "logically related" basis when there are allegations of a pattern of conduct. ("However, courts have generally denied severance on the basis that the claims were logically related in situations where there was also an allegation that the defendants' wrongdoing occurred pursuant to a policy or practice." N. Jersey Media Group, Inc., Id at 115.)

Additionally, Removing Defendants' reliance on North Jersey Media Group for their severance request to this Court is inappropriate. North Jersey Media is a copyright infringement

action brought under the Copyright Act of 1976 (17 U.S.C. § 101) and 28 USCS § 1338[1]. Under § 1338, District Courts have original jurisdiction of civil actions relating to copyright claims, and as such any severance analysis performed by the Federal District Court while exercising its broad discretion under Rule 21 was unencumbered by federal abstention principles like those present in this action. As the Southern District of New York noted, "[w]hile Rule 21 is routinely employed in cases that began in federal court, the "[f]ederal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." Judicial reluctance to employ Rule 21 in the removal context stems from the concern that application of Rule 21 would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." Sons of the Revolution in NY, Inc, Id at 6.

## D.  Factual Overlap Satisfies "Common Question of Law or Fact" Requirement

Plaintiff has pled colorable claims regarding the scope of the opioid enterprise and the PBM Defendants' critical role in its nefarious success. In its Complaint, the City of Amsterdam described the sophisticated enterprise and how "[t]he PBM and Manufacturer Defendants coordinated to ensure that the PBM Defendants got the maximum profit at the expense of patients." Additionally, Plaintiff described how "[t]he PBM formularies are a critical piece of the enterprise … [that] would not have succeeded absent the opioids' placement on the formulary … [which] controlled which opioids were paid for, reimbursed, and covered by public and private pharmacy benefit plans." (Comp. ¶¶ 1081, 1082)

---

[1] "*Patents, plant variety protection, copyrights, mask works, designs, trademarks, and unfair competition* – (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." *28 USCS § 1338 (a)*

Courts in this District have found that a finding of "factual overlap is sufficient to satisfy the requirement of "any common question of law or fact" and defeats the claim of fraudulent misjoinder." Sons of the Revolution in NY, Inc., Id at 10-11 (Holding that defendants were properly joined under CPLR § 1002(b) and making a finding of factual overlap between a power utility's interruption of services and an insurer's policy coverage regarding the cause of the damage.)

**E.  Defendants' Assertions of Lack of "Common Legal Issues" are Irrelevant**

In Massey v. Cecil, 2019 US Dist LEXIS 68480, the Court held that the removing defendants had not shown an improper joinder under CPLR 1002(b) although there were "divergent questions of law." The Massey action concerned "negligence claims against all Defendants and medical malpractice claims against the Provider Defendants aris[ing] out of the same transaction or occurrence—installation of improperly-sized components during Plaintiff's hip replacement surgery." Massey, Id at 13-14. The Court stated that "[a]lthough there are divergent questions of law with regard to Plaintiff's other claims—products liability, breach of warranty, and medical malpractice—determination of liability for those claims is necessarily dependent on the same questions of fact." Id at 14. Plaintiff's Complaint raises claims against all Defendants that involve common questions of fact and arise out of the same series of transactions.

**F.  The PBM Defendants' Role in Causing and Contributing to the Opioid Epidemic Should Not be Ignored and the Claims Should Not be Severed**

As the pills leave the hands of the Manufacturers they are passed to the Distributors who are tasked with distributing such drugs to the retail pharmacies, claims of which are managed by the PBM Defendants. Records of the entire chain of distribution involving Manufacturer

Defendants, Distributor Defendants, Retail Pharmacies and their interactions with the PBM Defendants will be essential discovery in this case. This includes records and communications between the Manufacturer Defendants, the Distributor Defendants, Retail Pharmacies and the PBM Defendants. The PBM Defendants are an essential part in the chain of distribution of opioid pain medications, in their role as "brokers between payers (representing patients), drug manufacturers, and retailers[.]" (Comp. ¶ 1076) Additionally, "they influence which drug products are used most frequently and set prices for pharmacies." (Id.) It is necessary for the PBM Defendants to be a part of the discovery process in this case to properly assign the responsibility for the diversion and flooding of opioids.

Since the resolution of this case will require answering inextricably linked questions of fact arising out of the flood of opioids via the Defendants' marketing, sale, promotion, and/or distribution into and within the City of Amsterdam, this action could not continue should we simply ignore the role of the PBM Defendants.

### G. Severance Under Rule 21 Favors Remand of the Instant Action and Will Prejudice Plaintiff as the PBM Defendants are an Essential Part in the Chain of Distribution

In their removal notice, the PBM Defendants statement that a "second independent ground for removal" exists under FRCP 21 (Removal Notice ¶ 41, Dkt No 1) is incorrect as this rule is utilized in actions that began in federal court as opposed to State court as is the instant action. In a removal context, severance under Rule 21 "would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." Sons of the Revolution in NY, Inc., Supra at 6.

Crucially, as previously noted, the Southern District of New York held that "[w]hile Rule 21 is routinely employed in cases that began in federal court, the federal courts have frowned on

using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." Id.

The PBM Defendants further state that in the absence of a finding of misjoinder by this Court, the claims against the non-PBM Defendants may be severed and rely on Kalie v. Bank of Am. Corp., 297 FRD 552, 558-559 [SDNY 2013] for their assertion. However, the facts that led to the severance of claims in the Kalie action differ greatly from this case. In Kalie, the court analyzed the involvement in the series of transactions and found that a defendant that was involved in "only one of the 15 transactions that remain in the case" was not "adequately alleged to have been part of a common series of transactions." ("[P]laintiffs seem to allege wrongdoing as to just a single property … Given its involvement in only one of the 15 transactions that remain in the case, [Defendant] assuredly has not been adequately alleged to have been part of a common series of transactions." Kalie v Bank of Am. Corp., 297 FRD 552, 558-559 [SDNY 2013])

As discussed above, the PBM Defendants are an essential part in the chain of distribution of opioid pain medications, in their role as "brokers between payers (representing patients), drug manufacturers, and retailers[.]" (Comp. ¶ 1076) Additionally, "they influence which drug products are used most frequently and set prices for pharmacies." (Id.) The involvement of PBM Defendants is in a different order of magnitude from the facts in Kalie. ("The big three PBMs manage the drug benefits for nearly 95% of the population. They control what drugs are covered by virtually all health insurance providers for over 260 million people. PBMs made almost $260 billion last year. In 2015 they covered most of the 4 billion retail prescriptions that were covered in the United States. They are key participants and play a crucial role in the administration of prescription drugs." Comp. ¶ 1077)

Removing Defendants reliance on Kalie is misplaced on both the scope of the transactions as alleged, and the roles played by Defendants in said transactions. Additionally, the fact that abstention principles related to removal jurisdiction were not on the table, the severance analysis of the Kalie Court was crucially distinct from this action.

Defendants additionally rely on Sullivan v Calvert Mem. Hosp. to further their severance request to this court, however; the Sullivan action is easily distinguished from Plaintiff's complaint against the PBM Defendants. The Sullivan action dealt with two independent events surrounding a surgery to implant a transvaginal sling. In the aftermath of the implant surgery a piece of a urinary catheter was inadvertently left behind inside the plaintiff's bladder by the surgeons performing the implant procedure. A subsequent surgery to remove the piece of catheter was unsuccessful in removing the catheter piece and resulted in the inadvertent removal of a piece of the plaintiff's urethra. In her action, Plaintiff alleged injuries resulting from the twice failed catheter removal procedure as well as injuries related to design defects of the sling that was implanted. It is clear from the facts of the case that although plaintiff's claims may involve the "same physical object," the medical malpractice claim, and the product liability claim are not intertwined in any relevant way.

Here, the Plaintiff's claims against the PBM Defendants' arise upon the intertwined and inextricably linked events related to the distribution through a supply chain that involves manufacturers, distributors, retailers, pharmacy benefit managers, pharmacies and eventually consumers. Each link in the chain then contributing to Plaintiff's claims and injuries.

Removing Defendants additionally state that severance in this case is "particularly appropriate" on judicial economy grounds.  However, courts in the Second Circuit have ruled in favor of remand and against severance where the plaintiff would be prejudiced due to wasteful

and duplicative litigation in federal and state courts and by the possibility of conflicting rulings. See Nolan v. Olean Gen. Hosp., 2013 US Dist LEXIS 96090, [WDNY July 10, 2013, No. 13-CV-333-A] (holding that remand should be ordered since dismissing non-diverse defendants pursuant to FRCP 21 "to establish complete diversity of citizenship would result in duplicative, wasteful litigation in federal and state courts that could result in conflicting rulings."); Sons of the Revolution in NY, Inc., Id. (finding that severance on basis of Rule 21 was not warranted since "the possibility of duplicative discovery is substantial in light of the overlap in the facts underlying Plaintiff's claims.")

Accordingly, this Court should deny PBM Defendants' request for severance and order the remand of this action to state court.

## **CONCLUSION**

For the reasons stated above, the Court should remand this action back to the Supreme Court of the State of New York, County of Montgomery to be transferred to the Supreme Court of the State of New York, County of Suffolk to join the Coordinated New York action in Suffolk County.

Dated: Melville, New York
         August 16, 2019

                                        Respectfully submitted,

                                        */s Hunter J. Shkolnik*
                                        Hunter J. Shkolnik
                                        NAPOLI SHKOLNIK PLLC
                                        400 Broadhollow Road, Suite 305
                                        Melville, New York 11747

                                        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2019, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will also transmit a Notice of Electronic Filing to all counsel of record.

*/s/ Hunter J. Shkolnik*
*Hunter J. Shkolnik*